# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Philip Fluegge,

     Plaintiff,   Case No. 12-cv-15500
             Hon. Judith E. Levy
v.           Mag. Judge David R. Grand

Nationstar Mortgage, LLC,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [43]

This action arises from the foreclosure and sale of a residential property formerly owned by plaintiff Philip Fluegge. He brings several state-law claims against defendant Nationstar Mortgage, LLC, seeking to overturn the foreclosure and sheriff's sale of the property. Before the Court is Nationstar's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Dkt. 43.) Plaintiff filed a response and defendant a reply. The Court heard oral argument on the motion at a hearing on June 11, 2015. For the reasons set forth below, the motion will be granted.

## I.    Factual background

On February 23, 2005, Fluegge executed a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") on real property located at 41767 Alden Dr., Clinton Twp., MI 48038 (the "Property"). (Dkt. 16-2, Ex. A to Def.'s Mot. to Dismiss, Mar. 28, 2013.) The mortgage secured a note (the "Note") Fluegge executed in favor of Flagstar Bank, FSB in the principal amount of $256,000. (Id.) MERS assigned the Note and Mortgage to defendant Nationstar Mortgage, LLC on March 6, 2010. (Dkt. 16-3, Ex. B to Def.'s Mot. to Dismiss.)

On May 4, 2010, Nationstar sent Fluegge a Loan Modification Agreement ("LMA") for signature. The cover letter attached to the LMA states that the payment amount in the LMA "represents the Principal and Interest only." (Dkt. 25-1, Ex. A to Amend. Compl.) The letter further indicates (1) the "first new modified principal and interest payment will be $1110.77, with the first payment due June 1st, 2010"; (2) "an escrow analysis will take place after the modification is booked," and that Fluegge had an estimated escrow shortage of $2994.60 in his account; (3) including the escrow shortfall, "[Fluegge's] new mortgage

payment . . . will be $1870.18," and without escrow shortage, $1820.27. (Id.)  Fluegge signed and dated the LMA on May 7, 2010.  (Id.)

Fluegge alleges he received a call on May 29, 2010, from Sharon Kim of Nationstar, stating that Fluegge was required to pay $2270.87 by 2 P.M. that same day, or the LMA would not be processed.  (Amend. Compl. ¶ 20.)  Fluegge timely wired the payment, but believes that the LMA did not require a down payment.  He maintains that the $2270.87 should have been applied to his June 1 and July 1, 2010 payments owed under the LMA.  (See id. ¶¶ 23, 25, 33.)

Fluegge does not allege making any further payments after the $2270.87 payment.   At some unidentified point, Fluegge stopped making payments on the Note – by his account, because his payments "just kept disappearing."  (Amended Compl. ¶ 36.)   Nationstar ultimately foreclosed the Mortgage, and the Property was sold at sheriff's sale on March 11, 2011.  (Dkt. 16-4, Ex. C to Def.'s Mot. to Dismiss.)  The Federal National Mortgage Association ("Fannie Mae") purchased the Property at the sheriff's sale.   (Id.)   The statutory redemption period expired September 11, 2011.  (Id.)

## II.   Procedural background

Fluegge first challenged the foreclosure in state court on August 26, 2011; that action was dismissed without prejudice on August 8, 2012.  He filed this action on December 17, 2012, at which time it was assigned to Judge Victoria A. Roberts.  (Dkt. 1.)   Plaintiff's initial complaint contained 22 counts.   Nationstar moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6); Judge Roberts granted in part and denied in part the motion.   (Dkt. 20.)   Judge Roberts allowed Fluegge to file an amended complaint; that complaint includes claims for defamation of title (Count I), breach of contract / wrongful foreclosure (Count II), fraud / misrepresentation (Count III), and violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) (Count IV).  (Dkt. 25.)

The case was reassigned to this Court on May 13, 2014.  (Dkt. 30.) Discovery in this matter closed on January 20, 2015, and the deadline for dispositive motions was February 3, 2015.   Nationstar filed this motion on February 3, 2015.

4

## III.   Standard of Review

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard is the same as that for motions under Fed. R. Civ. P. 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "factual allegations must be enough to raise the right of relief above the speculative level." *Id.*

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).  The court need not, however, accept as true "legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  A motion for judgment on the pleadings should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

In deciding a 12(c) motion, the court may consider the pleadings, exhibits attached to the pleadings, matters incorporated by reference into the pleadings, and judicially-noticed facts.  *See Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014) (applying Rule 12(b)(6) standard to Rule 12(c) motion); *Hawthorne v.*

6

*Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (judgment on the pleadings "can be rendered by looking to the substance of the pleadings and any judicially noticed facts" (quoting *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990))).

## IV.   Analysis

### A.   **Fluegge cannot sustain a challenge to the foreclosure and sheriff's sale**

It is well-established under Michigan law that a plaintiff cannot challenge a foreclosure and sale after the expiration of the 6-month redemption period, absent a clear showing of fraud or irregularity in the foreclosure proceedings themselves. *E.g., Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 (6th Cir. 2013); *Bryan v. JPMorgan Chase Bank*, *N.A.*, 304 Mich. App. 708, 713-14 (2014). The fraud or irregularity cannot relate to the "underlying equities, if any, bearing on the instrument." *Fed. Home Loan Mortgage Corp. v. Gaines*, 589 F. App'x 314, 317 (6th Cir. 2014) (quoting *Bank of N.Y. Mellon Trust Co. Nat'l Ass'n v. Robinson,* No. 311724, 2013 WL 6690678 at *2 (Mich. Ct. App. Dec. 19, 2013)).

7

A plaintiff must further allege prejudice – that he would have been in a better position to keep the property, absent the fraud or irregularity – in order to void the foreclosure and sale. *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-16 (2012).

### 1.   Fraud or irregularity

Fluegge has not alleged a fraud or irregularity in the foreclosure proceedings.   Rather, he alleges Nationstar (1) misapplied payments, and (2) failed to implement the LMA.  (Amend. Compl. ¶ 40; see also Dkt. 48, Pl.'s Resp. 15 ("Nationstar did not properly credit Fluegge after Fluegge paid the mortgage, and as a result, Nationstar improperly instituted foreclosure proceedings.").)  These allegations do not relate to the foreclosure proceedings, but to the "underlying equities . . . bearing on the instrument."  *Gaines*, 589 F. App'x at 317; *see Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) (holding failure to give plaintiffs a loan modification does not relate to the foreclosure process).

Understood to mean that Fluegge did not default, these allegations might qualify as a fraud or irregularity under Mich. Comp. Laws § 600.3204(1)(a), which allows a foreclosure by advertisement only

if "[a] default in a condition of the mortgage has occurred, by which the power to sell became operative." But Fluegge himself alleges that he stopped making payments under the Mortgage; in fact, Fluegge does not allege making any payments after the May 29, 2010 down payment. (See Amend. Compl. ¶¶ 26-36.) By Fluegge's own allegation, then, he defaulted in the condition of the Mortgage that required him (1) to make monthly payments, and (2) to continue doing so even if he had a claim or offset against Nationstar. (Mortgage, Uniform Covenant 1.)

Fluegge does not identify any other requirement of the foreclosure proceedings that was not met here. He has thus failed to allege fraud or irregularity in the foreclosure proceedings and cannot challenge the foreclosure and sheriff's sale.

### 2.   Prejudice

Even if he had alleged such fraud or irregularity, Fluegge has failed to allege prejudice to his ability to preserve his interest in the Property.

Fluegge failed to plead prejudice in his original complaint. He had alleged that he stopped making payments on the Note because

9

Nationstar increased his payment and failed to properly apply payments to his account, and that he suffered damages as a result. Judge Roberts permitted Fluegge to amend his complaint to plead prejudice. (*See* Dkt. 20, Opinion and Order 10.)  In his Amended Complaint, Fluegge alleges that "absent NATIONSTAR MORTGAGE, LLC's misapplication of payments and absent the failure to implement the loan modification, Plaintiff would have been in a better position financially to redeem the property prior to the end of the redemption period." (Amended Compl. ¶ 40.)

Fluegge's allegation of prejudice is conclusory, and he fails to allege any fact showing a causal connection between the alleged irregularities and his ability to redeem the property over a year later. *See Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 212 (2014) (finding plaintiff's allegations of prejudice "conclusory, and he has not alleged a causal connection between the alleged fraud or irregularity in the foreclosure procedure and any ability he might have had to preserve his property interest").

Michigan courts have considered "whether plaintiffs made an effort to redeem the property during the redemption period" a relevant

10

factor in demonstrating prejudice. *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 120-21 (2012) (Markman, J., concurring); *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 503 (2007) (finding defendants failed to show prejudice from alleged defect in foreclosure proceedings, where defendants "made no effort to redeem or take any action until well after the redemption period had run"). Here, Fluegge alleges no effort to redeem the property during the redemption period, or even thereafter.

Because he has failed to allege fraud or irregularity in the foreclosure process, and has failed to allege prejudice, Fluegge cannot challenge the foreclosure and sheriff's sale. Fluegge thus cannot obtain the relief he seeks: an order overturning the sale and invalidating the foreclosure.

To be clear, Nationstar is entitled to judgment on this basis alone. As explained below, Nationstar is also entitled to judgment on the merits of each of Fluegge's claims.

**B.     Count I: defamation of title**

Defamation, or slander, of title consists of filing a false lien against real property for the purpose of slandering the title to the property.  Mich. Comp. Laws § 565.108.  The elements of a defamation of title claim under both Michigan common and statutory law are falsity, malice, and special damages.  *Fannie Mae v. Lagoons Forest Condo. Ass'n*, 305 Mich. App. 258, 269-70 (2014).  The plaintiff must show an act of "express malice by the defendant, which implies a desire or intention to injure." *Id.* at 270 (internal citation and quotation marks omitted).  "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Id.* (citation omitted).  "A plaintiff may not prevail on a slander-of-title claim if the defendant's claim under the mortgage [or lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [the defendant] had rights in the real estate in question." *Id.*

Fluegge alleges Nationstar recorded the sheriff's deed against the Property without legal authority.  (Amend. Compl. ¶ 69.)

Nationstar seeks judgment on this count on four grounds: (1) Fluegge fails to state a claim for defamation of title against Nationstar, because Nationstar did not record the sheriff's deed; (2) the sheriff's deed was valid, precluding Fluegge from establishing the falsity element; (3) Fluegge failed to allege malice in the amended complaint, and (4) the claim is barred by the relevant statute of limitations.

### 1.   Nationstar did not record the sheriff's deed

The Court need only reach the first of these issues.   Fluegge's claim for defamation of title is premised on Nationstar's having allegedly "recorded a sheriff's deed ("lien") against Plaintiff's property, without the legal authority to do so." (Amend. Compl. ¶ 69; see also ¶¶ 70-84.)  The problem is that Nationstar did not record the sheriff's deed; Fannie Mae did.  (See Dkt. 16-4, Sheriff's Deed.)  Fluegge cannot state a claim for defamation of title against Nationstar on these facts.

### 2.   Fluegge has alleged no facts challenging the validity of the sheriff's deed

Even if Fluegge had brought this claim against the proper party, Fannie Mae, the claim still could not survive a Rule 12(c) motion.  The sheriff's deed to the Property was recorded on March 22, 2011.  (Dkt.

16-4, Ex. C to Def.'s Mot. Dismiss.)   Under Michigan law, the accompanying affidavits are "presumptive evidence of the facts therein contained." Mich. Comp. Laws § 600.3204.  Fluegge has alleged no facts supporting a plausible claim that the sheriff's deed is invalid; he only alleges that Nationstar had no right to foreclose.

Fluegge argues that the Court cannot consider the validity of the sheriff's deed, because the deed is evidence outside of the pleadings. (Dkt. 48, Pl.'s Resp. 13.)   He is wrong.   The deed and accompanying affidavits are a matter of public record and, as such, are properly considered on a Rule 12(c) motion. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (stating that "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment"); Mich. Comp. Laws § 600.3264 (affidavits accompanying sheriff's deed "shall be recorded by the register of deeds of the county in which the premises are situated").

The only other lien in this case appears to be the Mortgage, and Fluegge has made no allegations that Nationstar recorded an invalid mortgage.  Nationstar is entitled to judgment on Count I.

14

C.     **Count II: Breach of Loan Modification Agreement**

Fluegge alleges Nationstar breached the LMA in a number of ways, including: (1) imposing "unnecessary" fees and costs, (2) misstating the amount due on the loan, (3) requesting specific actions from Fluegge, then claiming his actions constituted default, (4) wrongful foreclosure, (5) refusal to perform in good faith, and (6) willfully misreporting Fluegge's payment history to credit reporting agencies.  (Amended Compl. ¶ 88.)

1.     The $2270.87 "down payment"

Fluegge does not identify the alleged "unnecessary fees and costs." (Amend. Compl. ¶ 88(a)-(b).)  Nor does he identify the "specific actions" requested by Nationstar.  (Id. ¶ 88(d).)  The only plausible inference is that both allegations refer to the down payment and its application.

a.     Charging the down payment

Although he does not specifically identify charging the down payment as a breach, Fluegge maintains that the LMA did not require a down payment.  (Id. ¶ 25.)  True, the LMA does not refer to a down payment, but the LMA does "amend[ ] and supplement[ ]" the Mortgage,

15

and "[e]xcept as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement." (LMA, Recitals; ¶ 5.)  The LMA expressly cancels only the provisions of the Mortgage that relate to any change in the interest rate payable under the Note.  (*Id.* ¶ 4.)

The following provision of the Mortgage thus still applied:

> **14.   Loan charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default . . . In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

(Mortgage § 14.)   Under this provision, Nationstar was not contractually prohibited from charging Fluegge the down payment.

### b.   Alleged misapplication of payments

Fluegge does not clearly allege in the Amended Complaint that Nationstar's application of the down payment is a breach of the LMA. (See Amended Compl. ¶ 88.)   But in his response brief, Fluegge

16

identifies the contractual breaches as (1) Nationstar's "failure to honor the Loan Modification Agreement"; and (2) Nationstar's failure "to properly apply the payments to his loan as required by the parties' contract." (Dkt. 48, Pl.'s Resp. 8-9.)

The key question, then, is which provision of the LMA concerns application of payments. The answer is that no provision in the LMA concerns application of payments. The LMA only does the following: (1) specifies the total unpaid principal balance of $251,729.07, (2) specifies the new interest rate on the loan, and (3) specifies the monthly payments of principal and interest due under the Mortgage. (*See* LMA ¶¶ 1-2.) The LMA also indicates, without specifying the amount, that Fluegge will be responsible for the escrow payment each month. (*Id.* ¶ 2.) Furthermore, the LMA provides that

> [t]he borrower will also comply with all other covenants, agreements, and requirements of the Security Instrument [namely, the Mortgage], including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

(*Id.* ¶ 4.)

17

The Mortgage contains a provision titled "Application of Payments." (Mortgage, Uniform Covenant 2.) But this provision only governs the application of "periodic payments" – that is, monthly payments. Fluegge does not allege Nationstar ever represented that the $2270.87 was a "periodic payment" – only that it was a "down payment." This provision thus does not govern application of the down payment. Fluegge has identified no other provision, either in the LMA or the Mortgage, that required Nationstar to apply the down payment to Fluegge's periodic payments. Because Fluegge has not identified such a provision, the alleged misapplication of the down payment cannot support a breach of contract claim.

### 2.   The monthly payment amounts

Fluegge alleges Nationstar breached by "repeatedly misstating the amount due" on the loan. (Amend. Compl. ¶ 88(c).) To the extent that Fluegge alleges Nationstar breached by charging him higher monthly payments than allowed under the LMA, this allegation is based on the payment figures in the cover letter attached to the LMA. But the cover letter makes clear that the payments are based on an <u>estimate</u> of escrow shortfall, and that "[a]n escrow analysis will take place after the

18

modification is booked." (LMA 1.) Given that these figures are estimates, Fluegge has failed to allege a breach of the LMA based on the slightly higher monthly payment figures he received in June, July, and August 2010.

### 3.   Wrongful foreclosure

As discussed above, Fluegge admits in his amended complaint to defaulting on the Note. (Amend. Compl. ¶ 36.) And Fluegge has not alleged fraud or irregularity in the foreclosure proceedings. Fluegge's allegation of "wrongful foreclosure" thus cannot support his breach of contract claim.

### 4.   Refusal to perform in good faith

Fluegge alleges Nationstar "refus[ed] to perform in good faith" and breached "the covenant of good faith and fair dealing." (Amend. Compl. ¶¶ 88(f); 92-97.) Michigan law "does not recognize a claim for breach of an implied covenant of good faith and fair dealing." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003). Fluegge cannot sustain his breach of contract claim based on Nationstar's alleged refusal to perform in good faith.

5.  <u>Misstating   payment   history   to   credit   reporting
agencies</u>

Fluegge fails to identify a provision of the LMA or the Mortgage
related to defendants' credit reporting obligations.  (See Amend. Compl.
¶ 88(h)), and thus cannot sustain his breach of contract claim based on
Nationstar's alleged misstatement of his payment history.

6.  <u>First-breach doctrine</u>

Finally, Fluegge maintains the first-breach doctrine precluded
Nationstar from foreclosing.  "The rule in Michigan is that one who first
breaches a contract cannot maintain an action against the other
contracting party for his subsequent breach or failure to perform."
*Flamm v. Scherer,* 40 Mich. App. 1, 8-9 (1972).  This doctrine simply
does not apply here, as Nationstar has not brought an action against
Fluegge for his breach – rather, Nationstar has foreclosed the Mortgage.
Moreover, as explained above, Fluegge has failed to state a claim for
breach of contract.

Nationstar is accordingly entitled to judgment on Count II.

### D.      Count III: Fraud / Misrepresentation

Fluegge alleges two material misrepresentations by Nationstar: (1) the representation that Fluegge had to pay $2,270.87 by 2 P.M. on May 29, 2010 to qualify for the loan modification, and (2) the representation that the loan modification was legal and binding on the parties. (Amend. Compl. ¶¶ 103, 106.)

Nationstar cites three grounds for judgment in its favor on Fluegge's fraud claim: (1) Fluegge has admitted the truth of the representation that the down payment was required, (2) Fluegge admits Nationstar did implement the loan modification, and (3) Fluegge's claim arises under the loan modification contract, and thus cannot be sustained under Michigan law.

The Court need only reach the third ground.   Michigan law precludes tort claims based on contractual obligations.   *See Fultz v. Union-Commerce Assocs.*, 470 Mich. 460 (2004).   Thus, "[w]hen a contract governs the relationship between the parties, the plaintiff must allege a violation of a legal duty separate and distinct from the contractual obligation to support a fraud claim."   *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 802 (E.D. Mich. 2012) (citing

*Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 84 (1997)). The only exception to this rule is that a plaintiff "may . . . pursue a claim for fraud in the inducement extraneous to the alleged breach of contract." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 374 (1995).

The two misrepresentations Fluegge alleges are both based on the LMA.  The first is plainly not extraneous to the alleged breach of the LMA: the allegedly fraudulent quality of the statement that Fluegge had to pay $2270.87 is premised on the fact that the LMA did not require such a payment.  And Fluegge has identified no legal duty owed him by Nationstar independent of the LMA or the Mortgage.

The second alleged misrepresentation might qualify as fraud in the inducement, as it appears to be a representation that Nationstar would implement the terms of the LMA, once it was executed.  (See Amend. Compl. ¶ 106.)  But this second misrepresentation is not pled with the required particularity.  Under Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gregory v.*

*CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 801 (E.D. Mich. 2012) (quoting *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942–43 (6th Cir.2009)). The plaintiff must also "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Id.* (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993)).

Fluegge fails to identify the precise statement, instead making a vague allegation that Nationstar "represented that the Plaintiff had a binding, legal loan modification." (Amend. Compl. ¶ 106.) Fluegge also fails to identify the speaker, or where and when the statement was made. *See Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 498 (6th Cir. 2014) (holding allegation that "defendants" misrepresented that plaintiff had been approved for a loan modification "does not identify the exact speaker" and thus "fall[s] far short of the specificity required by Rule 9(b)"). Moreover, Fluegge himself alleges Nationstar implemented the LMA, just "not in conformity with its own, written agreement." (Amend. Compl. ¶ 28.) In other words, Fluegge's second

23

allegation of fraud concerns the terms of the LMA, not whether the LMA would be implemented at all.

Fluegge responds that he has pled fraud in the alternative to his breach of contract claim, so the fraud claim should survive. But again, absent a legal duty independent of the contract, his fraud claim cannot succeed as a matter of law. And Fluegge fails to plead the second alleged incident of fraud with the "particularity" required by Rule 9(b). Nationstar is therefore entitled to judgment on Count III.

### E. Count IV: violation of FCRA

The FCRA sets forth the responsibilities of furnishers of credit information to credit reporting agencies. Under § 1681s-2(a), furnishers must "provide accurate information" and are prohibited from "reporting information with actual knowledge of errors" or "after notice and confirmation of errors." 15 U.S.C. § 1681s-2(a)(1)(A) and (B). Under § 1681s-2(b), "[u]pon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any

inaccuracies uncovered by the investigation." *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 358 (6th Cir. 2005)  (citing 15 U.S.C. § 1681s-2(b)(1)(A-D)).

Fluegge alleges he initiated a reinvestigation pursuant to the FCRA by sending letters to one or more national credit reporting agencies, disputing the reporting of "the disputed information." (Amend. Compl. ¶ 58.)  Fluegge does not indicate in his Amended Complaint what the disputed information is.  Fluegge further alleges that, "[u]pon information and belief," the three national credit reporting agencies notified Nationstar of the disputed information and of Fluegge's request for reinvestigation.  (Id. ¶ 59.)

According to Fluegge, following the reinvestigation, Nationstar violated section 1681s-2(b) of the FCRA by (1) continuing to report "the adverse credit information"; (2) reporting the derogatory credit information in conscious avoidance of the knowledge that the information "was supposed to be suppressed"; (3) reporting credit information "that was not in fact lawful"; (4) following direct notice of the dispute, failing to notify the consumer reporting agencies that the debt was disputed; (5) willfully or negligently failing to put in place

25

adequate procedures to reinvestigate disputed information; and (6) willfully or negligently failing to conduct a proper reinvestigation. (Amend. Compl. ¶¶ 114-121.)

Fluegge also alleges Nationstar violated the FCRA by failing to respond to a qualified written request from Fluegge, sent on October 18, 2012, and by failing to stop reporting "the derogatory information" during the period of 60 days following Nationstar's receipt of the qualified written request. (Amend. Compl. ¶¶ 53-4, 60, 113.) In his response brief, Fluegge points only to these two allegations as support for his FCRA claim. (Dkt. 48, Pl.'s Resp. 20-21.) But allegations based on a qualified written request pertain to a mortgage loan servicer's duty under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e)(3), not under the FCRA. These allegations therefore cannot support Fluegge's FCRA claim.

As for the remaining allegations, Nationstar argues they simply parrot the elements of the statute and fail to (1) specify the allegedly derogatory credit information, and (2) show more than "information and belief" that Nationstar was contacted by the credit reporting agencies. (Dkt. 43, Def.'s Br. 19.) Moreover, to the extent that the "derogatory

information" consists of Fluegge's default, the foreclosure, and the sheriff's sale, Nationstar maintains that information is accurate and cannot support a FCRA claim. (Id. at 20.)

Nationstar cites no authority for the position that Fluegge must specify the allegedly derogatory credit information in order to state a FCRA claim. And it is readily inferable that the information concerns Fluegge's default, the foreclosure, and the sheriff's sale.

As for the sufficiency of Fluegge's "information and belief" that the credit reporting agencies contacted Nationstar about Fluegge's dispute, the Sixth Circuit has not decided whether a plaintiff must allege more specific facts showing a reporting agency contacted a furnisher of information. In one case from this district, the court dismissed a claim for violation of § 1681s-2(b) for failing to allege the defendant, a furnisher of credit information, had received notice from a credit reporting agency. *Khahil v. Transunion, LLC*, No. 08-10303, 2009 WL 804165, at *2 (E.D. Mich. Mar. 25, 2009). The court found the plaintiff "only made a very general allegation that 'upon information and belief,' each of the nationwide CRAs [credit reporting agencies] had forwarded all information to [defendant]." *Id.*

27

In dismissing the claim, the court cited approvingly the analysis in *Densmore v. Genl. Motors Acceptance Corp.*, 2003 WL 22220177 (N.D. Ill. Sept. 22, 2003). The *Densmore* court reasoned that a plaintiff suing under § 1681s-2(b) can readily determine whether credit reporting agencies contacted the defendant furnisher: a consumer is entitled to receive "a description of the procedure used to determine the accuracy and completeness of the information . . . including the business name and address of any furnisher of information contacted in connection with such information." *Densmore*, 2003 WL 22220177, at *2 (citing 15 U.S.C. § 1681i(a)(6)(A)(iii)). A plaintiff may not, therefore, allege such contact solely on information and belief.

The reasoning in *Densmore* is convincing and should result in dismissal of Count IV. The *Densmore* court allowed the plaintiff to replead the claim. *See Densmore*, 2003 WL 22220177, at *3.[1] As discussed below, however, Fluegge will not be permitted to replead.

---

[1] Nationstar also cites *Lenhard v. CitiMortgage, Inc.*, No. 11-11810, 2012 U.S. Dist. LEXIS 31296, at *6 (E.D. Mich. Mar. 8, 2012) in support of its position that Fluegge's "information and belief" allegation warrants dismissal of count IV. But the *Lenhard* court provides no detail regarding the inadequacy of the plaintiff's pleading in that case, and granted leave to amend the complaint.

28

Fluegge cannot, however, show the allegedly adverse information was inaccurate. Fluegge's position appears to be that the reported information was inaccurate because he was not in default on the loan. In turn, this position depends on Nationstar having breached the LMA first, relieving Fluegge of his duty to perform under the LMA. As already discussed, Fluegge has failed to state a claim for breach of the LMA, and the "first-breach" doctrine does not apply here.

Even if Fluegge has stated a claim for breach of the LMA, however, the Mortgage remained in force, and Fluegge had a contractual duty under the Mortgage to make timely payments of principal and interest due under the Note, as well as escrow costs. (Mortgage ¶ 1.) Moreover, the Mortgage provides that "[n]o offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by the Security Instrument." (Id.) Reports that Fluegge was late or in default on the Note were thus accurate, precluding Fluegge from maintaining a claim under § 1681s-2(b).

Finally, Fluegge alleges no facts supporting his claim that Nationstar failed to investigate or inadequately investigated disputes forwarded by the credit reporting agencies.  Nationstar is accordingly entitled to judgment on Count IV.

### F.    Whether Fluegge should be allowed to amend the complaint

Fluegge seeks leave to amend his complaint if Nationstar's motion is granted.  (Dkt. 48, Pl.'s Resp. 21-23.)

Fed. R. Civ. P. 15(a) declares that leave to amend "shall be freely given when justice so requires."  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Discovery in this matter closed on January 20, 2015, and the dispositive motion deadline was February 3, 2015.  Allowing Fluegge to amend his complaint again at this point – after having amended it

already once, following a stipulated order to dismiss certain counts, and Judge Roberts' order dismissing other counts – would cause undue delay in resolving this case and would unduly prejudice Nationstar. (See Dkt. 14, Dkt. 20.)   Fluegge will not be permitted to amend his complaint again.

## IV.   Conclusion

Accordingly, defendant's motion for judgment on the pleadings (Dkt. 43) is GRANTED; and

Plaintiff's complaint (Dkt. 1) is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: July 20, 2015                     s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 20, 2015.

                                                     s/Felicia M. Moses
                                                     FELICIA M. MOSES
                                                     Case Manager

31